# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) No. 13-cr-00064 |
| | ) |
| **RAYMOND PAUL FRANCIS,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are DEFENDANT'S FIRST MOTION TO DISMISS INFORMATION (ECF No. 25) and DEFENDANT'S SECOND MOTION TO DISMISS INFORMATION (ECF No. 26) filed by Defendant Raymond Paul Francis ("Francis"). The Government has filed a response to each motion (ECF Nos. 27 and 28). Accordingly, the matter has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will **DENY** Defendant Francis' motions.

### I. Background

On March 7, 2013, one-count criminal Information (ECF No. 12) was filed against Francis, charging him with unlawfully reentering the United States after having been deported in violation of 8 U.S.C. § 1326(a). On May 6, 2013, in a proceeding before this Court, Francis waived his right to an indictment by grand jury. That same date, he entered a plea of not guilty to the Information. The following background, which is relevant for purposes of deciding Francis' motions, has been drawn from the parties' filings.

Francis, a citizen of the United Kingdom, came to the United States on or about

1

March 3, 1993, pursuant to the Visa Waiver Program ("VWP"),[1] which allowed him to remain in this country for 90 days. In exchange, Francis was required to sign a waiver of his right to challenge any removal actions brought by the government.

Francis' overstayed his authorized stay by several years. Eventually, on March 20, 1996, he married an American citizen named Bao Chau Huu Lee ("Annie Lee"). In February 1997, Francis and Annie Lee started the formal process for adjusting Francis' status to that of a lawful permanent resident ("LPR"). To that end, Annie Lee filed a Petition for Alien Relative ("Form I-130"), attesting to the fact of their marriage, and Francis filed an Application to Adjust Status ("Form I-485").

Although the adjustment process got underway, the matter was never formally adjudicated. While Francis' application was pending, the National Criminal Intelligence Service of Interpol in London, England informed the Maryland State Police that Francis was wanted in the United Kingdom for various drug-related offenses and had previously been convicted of several other crimes. Formal deportation proceedings began soon thereafter. As part of the deportation process, INS served Francis with several documents, which together make up his Alien File ("A-File"). First, he received a Form I-205 "Notice of Intent to Deport for Violating the Terms of Your Admission Under Section 217 of the Immigration and Nationality Act" on August 22, 1996. *See* Gov't Ex. F (ECF No. 28). In addition to explaining that Francis had exceeded his authorized VWP stay, the Notice indicated that because Francis signed a Form I-791 as part of his

---

1. The VWP was initially implemented as a pilot program, and was still in its pilot stage when Francis was admitted to this country. The program was deemed so successful that Congress made it permanent in 2000. *See* Visa Waiver Permanent Program Act, Pub. L. No. 106-396, 114 Stat. 1637 (2000). The VWP as it relates to Francis' second motion will be discussed more fully below. *See infra* section III(B)(1).

2

application for entry under the VWP, he waived his right to contest deportability.² *Id.* Francis was also served with a Form I-294 "Warning to Alien Ordered Removed or Deported" dated August 22, 1997, which advised that a return to this country following deportation would be a felony under § 1326. *See* Gov.'t Ex. G (ECF No. 28). Francis' A-File also contains a "Warrant of Deportation" authorizing an ICE agent to take Francis into salary and deport him, which was executed on August 28, 1997, when Francis left the country from Washington Dulles Airport via United Airlines Flight 918. *See* Gov't Ex. H (ECF No. 28). On October 31, 1997, INS informed Francis, through his attorney in the adjustment-of-status proceedings, that his application for LPR had been abandoned because of his deportation.

The government alleges that sometime thereafter Francis reentered the United States without first having obtained permission from the Attorney General to ensure his lawful re-admittance. According to the Information, he was discovered in the Western District of Pennsylvania using the alias "Anthony Judd" on or about February 21, 2013.

## II. Discussion

Francis argues that the information should be dismissed for two independent reasons, raised in separate motions. The Court will address each motion *seriatim*.

### A. Defendant's First Motion to Dismiss Information

Francis argues that the Information is fatally flawed because it does not list an essential element of the crime charged, specifically, "that an order of deportation or

---

2. The Notice refers to Francis' completion of an I-791 Form, which was the predecessor to the I-94W Form. Before 1991, a VWP applicant had to execute two separate forms when seeking admittance: an I-94 Form, which is the standard Arrival/Departure record issued to all aliens who are admitted to the United States, and an I-791, which contained the waiver of rights specific to the VWP. *See Cinquemani v. Ashcroft*, 03-CV-575S, 2006 WL 543789, at *1 (W.D.N.Y. March 3, 2006). The Form I-94W was first used in 1991, so it is unclear whether Francis would have actually signed an I-791 waiver, as well.

3

removal was issued in connection with the occasion, on or about August 28, 1997" when he was removed from this country.[3] Def.'s First Mot. to Dismiss 6 (ECF No. 25). The government contends that the Information meets the requirements of Fed. R. Crim. P. 7(c)(1).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides, in pertinent part, that an "information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." A motion alleging a defect in the information must be raised prior to trial. Fed. R. Crim. P. 12(b)(3)(B). In deciding a motion to dismiss under Rule 12(b)(3)(B), the district court's role is not to consider the sufficiency of the evidence, but merely to decide whether the allegations in the indictment are sufficient to charge the named offense. *U.S. v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (citing *U.S. v. Sampson*, 371 U.S. 75, 78–79 (1962)). An information is sufficient in that respect if (1) it contains the elements of the offense, (2) sufficiently informs the defendant of the allegations he must be prepared to meet, and (3) allows the defendant to plead an acquittal or conviction to prevent future prosecutions for the same offense. *U.S. v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations and internal quotation marks omitted). Notably, "an indictment parroting the language of a federal criminal statute is often sufficient[.]" *U.S. v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).

Francis has been charged with the crime of illegal reentry, in violation of 8 U.S.C. § 1326(a). That section of the statute provides that:

---

3. "What was formerly known as 'deportation' is now called 'removal'" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, div. C, 110 Stat. 3009–546. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 n.1 (2006). The terms are, therefore, interchangeable for the purpose of these motions. *See Avila-Macias v. Ashcroft*, 328 F.3d 108, 111-12 (3d Cir. 2003).

any alien who --

> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters . . . or is . . . found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both.

*Id.* The elements of the offense are "are as follows: (1) the defendant is an alien who was previously deported; (2) the defendant thereafter voluntarily attempted to reenter the United States; and (3) the defendant had not received the consent of the Attorney General to return or apply for readmission." *U.S. v. Perez*, 459 Fed. Appx. 191, 198 (3d Cir. 2012).

A review of the Information makes clear that the government has set forth all of those elements with sufficient clarity. Specifically, the government charges that Francis (1) is an alien; (2) was deported or removed from the United States pursuant to law on or about August 28, 1997; and (3) "knowingly and unlawfully reentered the United States and was found in Allegheny County, Pennsylvania, without having applied for and received" permission. Information 1 (ECF No. 12). Accordingly, the Information is facially valid under the liberal requirements of Rule 7(c)(1); the existence of the order of removal need not be separately pled.

That is not the end of the matter, though. Not only does Francis contend that the Information is facially insufficient, he also contends that because his A-file does not contain a formal order of removal, the charge against him cannot, as a matter of law, be proven. In the context of the VWP, "[t]he term 'order of [removal]' means the order of

5

the [district director] . . . concluding that the alien is deportable or ordering deportation."
8 U.S.C. § 1101(g). The government has not clarified whether such an order was ever directed at Francis following the issuance of the "Notice of Intent to Deport" on August 22, 1997. Nor has it specifically responded to Francis' argument that the alleged failure to issue a copy of the removal order undermines its entire case against him. In any case, the Court does not agree that the failure to produce a separately titled removal order – or even the non-existence of one – is necessarily fatal to the government's prosecution, such that the case must be dismissed at this stage.

The Court understands the crux of Francis' argument to be that a deportation is only "in pursuance of law" if it follows the issuance of a document formally entitled "order of removal." The phrase "in pursuance of law" is derived from "8 U.S.C. § 180(a) (1946 ed.) (repealed 1952), which provided that any alien who had been 'deported in pursuance of law' and subsequently entered the United States would be guilty of a felony." *U.S. v. Mendoza-Lopez*, 481 U.S. 828, 835 (1987). Congress "failed to include in § 1326 the 'in pursuance of law' language of § 180(a)," *id.* at 836, but in *Mendoza-Lopez* the Supreme Court held that a § 1326 conviction must be supported by a lawful deportation – one in which the alien was accorded due process, *id.* at 837. However, neither *Mendoza-Lopez* nor the pre-*Mendoza-Lopez* case cited by Francis, *United States v. Bowles*, 331 F.3d 742 (3d Cir. 1964), make the existence of a document styled "order of removal" the *sine qua non* of a lawful deportation and, in turn, a prosecution under § 1326. Francis' reliance on *United States v. Ramirez-Carcamo*, 559 F.3d 384 (5th Cir. 2009) to support this point is similarly misplaced. In that case, the Fifth Circuit Court of Appeals did not, as Francis suggests, consider the "necessity" of an order of removal in a

6

§ 1336 prosecution. It merely considered issues related to the timing of the issuance of the order of removal in relation to the alien's departure. *Id.* at 390 (citing 8 U.S.C. § 1101(g)).

Contrary to Francis' argument, our appellate court "ha[s] taken a broad view of what constitutes a 'final order of removal.'" *Higgs v. Attorney Gen. of the U.S.*, 655 F.3d 333, 337 (3d Cir. 2011). It has "treated documents to be final orders of removal . . . that, as is true here, by their titles might seem to be something less than final provided that the documents were coupled with agency action so that the documents and the action together had the effect of 'an order . . . concluding that the alien is [removable] or ordering [removal].'" *Vera v. Attorney Gen. of the U.S.*, 672 F.3d 187, 192, *vacated on other grounds*, 693 F.3d 416 (3d Cir. 2012) (quoting *Khouzam v. Attorney Gen. of the U.S.*, 549 F.3d 235, 247 (3d Cir. 2008)) (treating "Notice of Intent to Deport" as a final order of removal for purposes of deciding whether Court had jurisdiction to review order).[4] Likewise, courts in other circuits have made it clear that "the government ***need not*** introduce an order of deportation or removal" in order to prove the element of prior lawful deportation. *U.S. v. Landeros-Mendez*, 206 F.3d 1354, 1357 (10th Cir. 2000) (citation omitted) (emphasis added). Instead, "the government merely needs to prove that a deportation proceeding actually occurred with the end result of [Francis] being deported." *U.S. v. Medina*, 236 F.3d 1028, 1031 (9th Cir. 2001). Either an order of removal *or* a warrant of removal, among other types of evidence, could be sufficient to

---

4. The original decision in *Vera* was vacated after the government admitted that it incorrectly misrepresented to the Court of Appeals that Vera entered the United States pursuant to the VWP. *Vera*, 693 F.3d at 416. The Court recognizes that the now-vacated decision in *Vera* is no longer binding. *See O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect."). Still, it may be cited for its informational and persuasive value. *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005) (citation omitted).

7

satisfy that burden. *See, e.g.*, *U.S. v. Contreras*, 63 F.3d 852, 857-58 (9th Cir. 1995) (holding that warrant of removal indicating that defendant's deportation was witnessed by INS personnel was sufficient evidence of prior deportation); *Landeros-Mendez*, 206 F.3d at 1357-58 (same); *U.S. v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994) (same); *see also U.S. v. Quezada*, 754 F.2d 1190, 1193–95 (5th Cir. 1985) (holding that warrant of removal was sufficient to satisfy "arrest" requirement of the prior version of § 1326).

Applying those principles in this case, the documents contained in Francis' A-file make it reasonable to conclude that Francis was, in fact, ordered to be removed by the district director and the he departed the United States pursuant to that order. The Notice of Intent to Deport was essentially a final order of removal, even though it may not have been styled as such. *See* Gov't Ex. G ("It has been ordered that you be deported to the United Kingdom."). Francis' argument is, therefore, without merit, and there is no basis for dismissing the Information.

**B.     Defendant's Second Motion to Dismiss Information**

Alternatively, Defendant Francis attempts to make a collateral attack on his deportation under 8 U.S.C. § 1326(d), by arguing that the removal order was improperly granted because there was a Petition for Alien Relative ("Form I-130") and an Application to Adjust Status ("Form I-485") pending at the time of his removal.[5] For its part, the government contends that Francis has failed to satisfy the requirements of § 1326(d) and therefore cannot challenge the removal order. At the heart of the

---

5. Title 8, United States Code, Section 1255(c)(4) "generally makes VWP entrants ineligible for the 'adjustment of status' remedy." *Bradley v. Attorney Gen. of the U.S.*, 603 F.3d 235, 242 n.6 (3d Cir. 2012). However, that provision "carves out an exception for VWP entrants seeking to adjust their status on the basis of an immediate-relative petition. The term 'immediate relative' includes the spouse of a U.S. citizen." *Id.* (citing 8 U.S.C. § 1151(b)(2)(A)(i)).

government's argument is the fact that Francis previously waived any rights to challenge the removal order when he entered the United States pursuant to the VWP. The Court agrees with the government that the waiver prevents Francis from collaterally attacking the validity of his removal.

### 1. Visa Waiver Program Background

A brief overview of the VWP is necessary to place Francis' argument in context. The VWP permits citizens of certain friendly countries, including the United Kingdom, to enter the United States without a visa for a term 90 days as long as certain requirements are met. *Bradley v. Attorney Gen. of the U.S.*, 603 F.3d 235, 238 (3d Cir. 2010) (citing 8 U.S.C. § 1187). Among those requirements, a VWP applicant must waive his right to challenge government admissibility determinations and removal actions, although he may contest removal actions on the basis of asylum. *Id.* (citing 8 U.S.C. § 1187(a)-(b)). The waiver must be executed prior to admission by completing and signing a Form I–94W, Nonimmigrant Visa Waiver Arrival/Departure Form. 8 C.F.R. § 217.2(b)(1).

As the Court of Appeals has explained, "the effects of this no-contest provision are severe." *Id.* In addition to waiving his rights to object to his removal on non-asylum grounds, a VWP applicant agrees that his removal "shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral . . . to an immigration judge for a determination of deportability." 8 C.F.R. § 217.4(b)(1). Furthermore, "[r]emoval by the district director . . . is equivalent in all respects and has the same consequences" as removal ordered by an immigration judge following a hearing. *Id.* § 217.4(b)(2). While the waiver-requirement may be severe, "given the ease and convenience with which a VWP visitor may enter the United

9

States," it is considered the VWP's "'linchpin . . . assur[ing] that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays.'" *Bradley*, 603 F.3d at 238-39 (quoting *Handa v. Clark*, 401 F.3d 1129, 1135 (9th Cir. 2005)). With that background in view, the Court will turn to the contentions raised by the parties relative to § 1326(d).

      2.      <u>Collateral Challenge to Removal Order under § 1326(d)</u>

"Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances." *U.S. v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006). To successfully challenge his deportation, an alien must prove that (1) he "exhausted any administrative remedies that may have been available to seek relief against the [deportation] order;" (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;" and (3), "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Francis has the burden of proof as to each element of that three-part test. *Richardson v. U.S.*, 558 F.3d 216, 223 (3d Cir. 2009) (citation omitted).

Francis acknowledges that he waived his right to challenge his removal order and to any judicial review when he entered this country pursuant to the WVP.[6] He has not attempted to undermine the validity of that written waiver. *See id.* at 222 (placing burden

---

6. The government has informed the Court that it no longer has the entire Form I-94W completed and signed upon his entry to the country in March 1993. It has, however, produced a portion of the form, which bears Francis' name, date of birth, admission date, and departure number. Francis does not appear to dispute that he entered the United States under the VWP. The Court will, therefore, apply the "presumption of regularity" established in *Bradley* and conclude that Francis did sign the form and validly waive his rights to review. *Bradley*, 603 F.3d at 239 ("Because 'agency action . . . is entitled to a presumption of regularity,' *McLeod v. INS*, 802 F.2d 89, 95 (3d Cir.1986), we presume that the Department admitted Bradley under the VWP only after collecting the top portion of his completed I–94W form, including his signed VWP waiver.").

of proving that waiver of rights to contest deportation order on the alien). Instead of challenging the waiver, he cites *Freeman v. Gonzales*, 444 F.3d 1031, 1035 (9th Cir. 2006) for the proposition that the waiver "was no longer in effect once he filed the application to adjust his status." Def.'s Second Mot to Dismiss 6 (ECF No. 26). This argument has already been rejected by the Third Circuit Court of Appeals, along with six other federal appellate courts. *See Bradley*, 603 F.3d at 242 (collecting cases). As the Court of Appeals explained, during the 90-day period of lawful entry, a non-immigrant visitor may file an immediate relative adjustment-of-status application because such an application does not amount to a challenge to removal. *Id.* (quoting *Bayo v. Napolitano*, 593 F.3d 495, 507 (7th Cir. 2010) (en banc)). After 90 days, however, "he may not . . . adjust his status as a defense to removal." *Id.* In other words, the "'waiver kicks in, preventing an objection to removal (except for asylum), including on based on adjustment of status.'" *Id.* (quoting *Bayo*, 593 F.3d at 507).

Our appellate court has made clear that *Freeman*, the case on which Francis relies, "does not compel another result." *Id.* Although the Ninth Circuit Court of Appeals did hold that an alien could contest his removal on the basis of his adjustment of status application, that decision was subsequently narrowed "to cover only VWP entrants who petition to adjust their status during their lawful 90-day stay." *Id.* (citing *Momeni v. Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2008)). Accordingly, even if this Court were to adopt *Freeman*, Francis would be out of luck because he sought to adjust his status well beyond the expiration of his authorized stay. *See id.* At that time, his adjustment-of-status application was barred by his valid VWP waiver, under which he was not entitled to any form of judicial review of the decision to deport him. Accordingly, there is no

11

basis for a collateral attack of his removal.

## IV.  Conclusion

For the foregoing reasons, Defendants' motions will be **DENIED**. An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) No. 13-cr-00064 |
| RAYMOND PAUL FRANCIS, | ) ) ) |
| Defendant. | ) ) |

## ORDER OF COURT

AND NOW, this 30th day of October, 2013, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED** and **DECREED** that DEFENDANT'S FIRST MOTION TO DISMISS INFORMATION and DEFENDANT'S SECOND MOTION TO DISMISS INFORMATION are **DENIED**.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **James Kitchen, Esq.**
Email: jimmy.kitchen@usdoj.gov

**Thomas Livingston, Esq.**
Email: Thomas_Livingston@fd.org